GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY LONGO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OSI SYSTEMS, INC., DEEPAK CHOPRA, and ALAN EDRICK, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Cory Longo ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by OSI Systems, Inc. ("OSI" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by OSI; and (c) review of other publicly available information concerning OSI.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired OSI securities between August 21, 2013 and December 6, 2017, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      OSI purportedly designs and manufactures specialized electronic systems and components.  The Company claims that it sells its products and provides related services in diversified markets, including homeland security, healthcare, defense, and aerospace.

3.      On December 6, 2017, Muddy Watters Research published a report on OSI entitled "OSIS: Rotten to the Core."  Therein, Muddy Waters alleges that there was corruption in the 2013 award of OSI's Albania concession.  Muddy waters claims that while the concession "has an estimated top line lifetime value of $150 million to $250 million," OSI "likely bribed somebody by giving half of it away for $4.50" since "[t]here was an unannounced transfer of 49% of OSIS's project company, S2 Albania SHPK, to a holding company owned by an Albanian doctor, for consideration of less than $5.00."  Muddy waters also alleges that "investigators'

---

[1] "Defendants" refers to OSI, Deepak Chopra, and Alan Edrick, collectively.

interviews with former employees yielded numerous anecdotes indicating OSIS is rotten to the core," including "knowledge of improper sales, cash payments to government officials, fraud in a significant contract, and that OSIS had narrowly avoided being debarred from doing business with the U.S. government."

4.      On this news, the Company's stock price fell $24.55 per share, or 29.2%, to close at $59.52 per share on December 6, 2017, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that OSI acquired the Albania concession through bribery or other illicit means; (2) that OSI transferred 49% of its project company associated with the Albania concession, S2 Albania SHPK, an entity purportedly worth millions, for consideration of less than $5.00; (3) that OSI engaged in other illegal acts, including improper sales and cash payments to government officials; (4) that these practices caused the Company to be vulnerable to potential civil and criminal liability, and adverse regulatory action; and (5) that, as a result of the foregoing, Defendants' statements about OSI's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §

78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in the Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Cory Longo, as set forth in the accompanying certification, incorporated by reference herein, purchased OSI securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant OSI Systems, Inc. is incorporated in Delaware and its principal executive offices are in Hawthorne, California. OSI's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "OSIS."

13.     Defendant Deepak Chopra ("Chopra") was the Chief Executive Officer ("CEO") of OSI at all relevant times.

14.     Defendant Alan Edrick ("Edrick") was the Chief Financial Officer ("CFO") of OSI at all relevant times.

15.     Defendants Chopra and Edrick (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of OSI's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional

investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    OSI purportedly designs and manufactures specialized electronic systems and components.  The Company claims that it sells its products and provides related services in diversified markets, including homeland security, healthcare, defense, and aerospace.

### Materially False and Misleading
### Statements Issued During the Class Period

17.    The Class Period begins on August 21, 2013.  On that day, the Company issued a press release entitled "OSI Systems Receives Fifteen-Year Agreement to Provide Turnkey Screening Services in Albania."  Therein, the Company, in relevant part, stated:

> OSI Systems, Inc. (NASDAQ: OSIS), a vertically-integrated provider of specialized electronics and services, today announced that the Government of Albania has awarded its Security Division, Rapiscan Systems, a fifteen-year contract to provide turnkey cargo and vehicle security screening services at various sites throughout the country.

> OSI Systems' CEO, Deepak Chopra, stated, "This significant award from Albania to provide turnkey screening services builds upon similar long-term agreements awarded by the Puerto Rico ports authority and Mexico's tax and customs authority. Our strategy of expanding our security offerings beyond the manufacture and sale of screening and detection equipment by providing comprehensive turnkey screening services continues to be well received in the marketplace. Our experience and capability to develop and integrate leading edge

inspection technologies coupled with our depth of operational expertise is unmatched in the industry and we believe makes us uniquely qualified to secure and manage such complex programs."

Under the program, Rapiscan Systems intends to provide a comprehensive X-ray screening program, which will incorporate technology, staffing, systems integration, and maintenance support at sites throughout Albania. These operational capabilities are intended to enhance the Albanian government's capability to interdict contraband and undeclared materials. The Company currently anticipates that total gross revenues may range from $150 million - $250 million over the term of the agreement. Actual revenues could differ significantly from the range provided as the generation of revenue is based upon the volume of cargo and other factors.

Ajay Mehra, President of Rapiscan Systems, stated, "The Albanian government's initiative to secure its ports and land crossings represents another significant step in the security inspection arena. We are proud to have been selected to execute this critical program. Our selection reinforces the attractiveness and compelling value of our turnkey service model."

18.     On August 25, 2014 OSI issued a press release entitled "OSI Systems Reports Fourth Quarter and Fiscal Year 2014 Financial Results."  Therein, the Company, in relevant part, stated:

OSI Systems, Inc. (NASDAQ: OSIS) today announced financial results for its fourth quarter and fiscal year ended June 30, 2014.

Deepak Chopra, OSI Systems President and CEO, stated, "We are pleased to report record results for our fourth quarter. Led by our Security Division, we reported a 14% increase in sales with strong bookings highlighted by a significant Foreign Military Sales (FMS) contract from the U.S. Department of Defense. Our substantial backlog and pipeline of opportunities place us in a solid position heading into our new fiscal year."

The Company reported revenues of $260 million for the fourth quarter of fiscal 2014, an increase of 14% from the $228 million reported for the fourth quarter of fiscal 2013. Net income for the fourth quarter of fiscal 2014 was $22.1 million, or $1.07 per diluted share, compared to net income of $11.8 million, or $0.58 per diluted share, for the fourth quarter of fiscal 2013. Excluding the impact of impairment, restructuring and other charges and the impact of tax elections discussed below, net income for the fourth quarter of fiscal 2014 would have been $24.5 million, or $1.19 per diluted share, compared to net income of $20.9 million, or $1.02 per diluted share, for the fourth quarter of fiscal 2013. Adjusted EBITDA for the fourth quarter of fiscal 2014 was $51.1 million, an increase of 17% from $43.8 million for the fourth quarter of fiscal 2013.

For the fiscal year ended June 30, 2014, the Company reported revenues of $907 million, a 13% increase from the $802

million reported for fiscal 2013. Net income for fiscal 2014 was $47.9 million, or $2.33 per diluted share, compared to net income of $44.1 million, or $2.15 per diluted share, in fiscal 2013. Excluding the impact of impairment, restructuring and other charges and the impact of tax elections discussed below, net income for fiscal 2014 would have been $64.3 million, or $3.13 per diluted share, compared to net income of $56.8 million, or $2.76 per diluted share, for fiscal 2013. Adjusted EBITDA for fiscal 2014 was $164.6 million, an increase of 30% from $126.4 million for fiscal 2013.

As of June 30, 2014, the Company's backlog was approximately $0.8 billion, which was comparable to the backlog as of March 31, 2014. During fiscal 2014, the Company generated cash flow from operations of $129.2 million and capital expenditures were $54.6 million.

Mr. Chopra continued, "During the fourth quarter, our Security Division's sales growth was outstanding, increasing 45% over the prior year period. This strength was seen across multiple sales channels and product lines. With a record non-turnkey backlog, we believe we are well positioned for continued growth in this division."

Mr. Chopra further commented, "Our Healthcare Division finished a challenging year with a disappointing fourth quarter as revenues decreased 15% from the prior year period primarily due to uncertainties in the capital spending environment among North American hospitals. Despite this setback, we are optimistic that our expanded product offering and an anticipated rebound in the North American market will lead to a return to revenue growth."

Mr. Chopra concluded, "Our Optoelectronics and Manufacturing Division had essentially a flat fourth fiscal quarter in terms of revenues but delivered lower profitability due primarily to an unfavorable product sales mix. This division, however, continues to expand its customer base across several industries with OEMs that need a global manufacturing footprint. As we enter fiscal 2015, we will continue to look for ways to increase productivity and efficiencies and improve the operating margin of our Optoelectronics and Manufacturing Division."

During the third quarter of fiscal 2014, the Company made certain tax elections related to the turnkey program in Mexico to accelerate depreciation and realize cash tax savings of approximately $21 million. In doing so, the Company forfeited tax basis in certain fixed assets that resulted in a charge to income tax of $7.6 million. The Company made a similar election during the fourth quarter of fiscal 2013 that resulted in a charge to income tax of $6.8 million. These elections resulted in an effective tax rate of 36.9% and 36.4% for fiscal years 2014 and 2013, respectively, and 25.4% and 52.7% for the fourth quarters of fiscal 2014 and 2013, respectively. Had these elections not been made, the effective tax rate would have been 26.8% and 26.6% for fiscal 2014 and 2013, respectively, and 25.4% for each of the fourth quarters of fiscal 2014 and 2013. Such tax election is no longer available under Mexican tax law beginning January 1, 2014.

**Company Outlook - Guidance for Fiscal 2015**

The Company announced that it anticipates fiscal 2015 sales to be between $960 million and $985 million. In addition, the Company anticipates approximately 12% - 20% growth in earnings per diluted share to $3.50 to $3.75, excluding the impact of impairment, restructuring and other charges, and the impact of certain tax elections.

19.    On August 27, 2014, the Company filed its annual report on Form 10-K for the year ended June 30, 2014. The 10-K was signed by Defendant Edrick, and reaffirmed the Company's statements about its financial results contained in the press release issued on August 14, 2014.

20.    On August 20, 2015 OSI issued a press release entitled "OSI Systems Reports Fourth Quarter and Fiscal Year 2015 Financial Results." Therein, the Company, in relevant part, stated:

OSI Systems, Inc. (NASDAQ: OSIS) today announced financial results for its fourth quarter and fiscal year ended June 30, 2015.

Deepak Chopra, OSI Systems' President and CEO, stated, "We are pleased to report our fourth quarter and full year operating results. We achieved record sales and earnings during the quarter and fiscal 2015. With a robust pipeline of opportunities across each of our divisions coupled with significant, recently implemented operational improvement initiatives, we are optimistic for the future."

The Company reported revenues of $267 million for the fourth quarter of fiscal 2015, an increase of 2% from the $260 million reported for the fourth quarter of fiscal 2014. Net income for the fourth quarter of fiscal 2015 was $22.4 million, or $1.09 per diluted share, compared to net income of $22.1 million, or $1.07 per diluted share, for the fourth quarter of fiscal 2014. Excluding the impact of restructuring and other charges, net income for the fourth quarter of fiscal 2015 would have been $25.0 million, or $1.22 per diluted share, compared to net income of $24.5 million, or $1.19 per diluted share, for the fourth quarter of fiscal 2014.

For the fiscal year ended June 30, 2015, the Company reported revenues of $958 million, a 6% increase from the $907 million reported for fiscal 2014. Net income for fiscal 2015 was $65.2 million, or $3.17 per diluted share, compared to net income of $47.9 million, or $2.33 per diluted share, in fiscal 2014. Excluding the impact of restructuring and other charges, and the impact in fiscal 2014 of tax elections related to the Company's turnkey program in Mexico, net income for fiscal 2015 would have been $72.4 million, or $3.53 per diluted share, compared to net income of $64.3 million, or $3.13 per diluted share, for fiscal 2014.

During the quarter, the Company's book-to-bill ratio for equipment and related services (non-turnkey) was 1.2 and, as of June 30, 2015, the Company's backlog was $638 million. During fiscal 2015, the Company generated cash flow from operations of $105.1 million.

Mr. Chopra further commented, "Sales in our Healthcare Division increased by 29% over the prior year fourth quarter driven by significant growth in our U.S. patient monitoring business and the impact of an acquisition completed in the first quarter. New products have been well received, contributing to a very strong quarter providing nice momentum as we head into fiscal 2016."

Mr. Chopra continued, "Our Security Division's fourth quarter sales of $131 million were solid. Due to the difficult comparison from the partial fulfillment of our Foreign Military Sale contract with the U.S. Department of Defense in the fourth quarter of the prior year, revenues were down 7%. We are encouraged by the prospects of continued strong performance with the strength of the backlog, new cargo and vehicle inspection product orders, multiple wins for the recently introduced RTT™ 110 (Real Time Tomography) explosives detection systems, and a robust pipeline of opportunities throughout our product and turnkey portfolio."

Mr. Chopra concluded, "During the fourth quarter our Optoelectronics and Manufacturing Division realized solid operating margin improvement and completed a significant facility consolidation within our contract manufacturing business. This initiative, as well as the recent deployment of other efficiency enhancements in our Healthcare and Security Divisions, will benefit our operations going forward."

**Company Outlook - Guidance for Fiscal 2016**

Subject to the risks described herein, the Company anticipates fiscal 2016 sales to be between $985 million and $1,020 million. In addition, the Company anticipates earnings per diluted share of $3.75 to $4.00, excluding the impact of restructuring and other charges.

21.     On August 24, 2015, the Company filed its annual report on Form 10-K for the year ended June 30, 2015.  The 10-K was signed by Defendant Edrick, and reaffirmed the Company's statements about its financial results contained in the press release issued on August 20, 2015.

22.     On August 16, 2016 OSI issued a press release entitled "OSI Systems Reports Fourth Quarter and Fiscal Year 2016 Financial Results."  Therein, the Company, in relevant part, stated:

OSI Systems, Inc. (NASDAQ: OSIS) today announced financial results for its fourth quarter and fiscal year ended June 30, 2016.

Deepak Chopra, OSI Systems' President and CEO, stated, "While our fourth quarter and full year operating results, in part, reflect the challenges of fiscal 2016, we are optimistic about our prospects for fiscal 2017. We are confident that our strengthened leadership team, enhanced product portfolios and robust pipeline of opportunities across each of our divisions position us well for top line growth and expanded profitability in fiscal 2017."

The Company reported revenues of $221 million for the fourth quarter of fiscal 2016, a decrease of 17% from the $267 million reported for the fourth quarter of fiscal 2015. Net income for the fourth quarter of fiscal 2016 was $5.9 million, or $0.30 per diluted share, compared to net income of $22.4 million, or $1.09 per diluted share, for the fourth quarter of fiscal 2015. Excluding the impact of impairment, restructuring and other charges, net income for the fourth quarter of fiscal 2016 would have been $10.8 million, or $0.55 per diluted share, compared to net income of $25.0 million, or $1.22 per diluted share, for the fourth quarter of fiscal 2015.

For the fiscal year ended June 30, 2016, the Company reported revenues of $830 million, a 13% decrease from the $958 million reported for fiscal 2015. Net income for fiscal 2016 was $26.2 million, or $1.30 per diluted share, compared to net income of $65.2 million, or $3.17 per diluted share, in fiscal 2015. Excluding the impact of impairment, restructuring and other charges, net income for fiscal 2016 would have been $42.4 million, or $2.11 per diluted share, compared to net income of $72.4 million, or $3.53 per diluted share, for fiscal 2015.

During the quarter ended June 30, 2016, the Company's book-to-bill ratio for equipment and related services (non-turnkey) was 1.0 and, as of June 30, 2016, the Company's backlog was $623 million. During fiscal 2016, the Company generated cash flow from operations of $59.2 million.

Mr. Chopra further commented, "Bookings were solid throughout fiscal 2016 in the Security Division. The combination of various contract push-outs and slower conversion of backlog into revenues resulted in lighter sales during the fourth quarter in comparison with a very strong performance in the same period of the prior year. We expect significant growth in fiscal 2017 driven across many product lines including the RTT™ 110 (Real Time Tomography) explosives detection systems. Multiple significant wins during fiscal 2016 and continuing into fiscal 2017 are expected to lead to sizeable revenue growth in this product line in the coming year. The future of the RTT™ 110 looks bright as it continues its trajectory towards a market leadership position in Europe and Middle East. We are also very encouraged by the outstanding performance of our turnkey security screening services operations in fiscal 2016 and the pipeline of opportunities for further turnkey awards in fiscal 2017."

Mr. Chopra continued, "Operating efficiencies in the Optoelectronics and Manufacturing Division continued to drive year over year profit growth. Though external sales decreased by 1% during the fourth quarter from the prior year, we were able to achieve operating margin

improvement on a lower revenue base in the fourth quarter as we have throughout fiscal 2016."

Mr. Chopra concluded, "As anticipated, sales in our Healthcare Division increased from the third quarter but were down year over year. As we enter fiscal 2017, we are optimistic about our Healthcare business in general due to adjustments to our product portfolio and changes in the Division's leadership and, as a result, we expect to return to growth in fiscal 2017."

**Fiscal Year 2017 Outlook**

Subject to the risks described in this release, the Company anticipates fiscal 2017 sales to grow 4% - 8% to $865 million - $895 million. In addition, the Company anticipates 23% - 37% growth in earnings per diluted share to $2.60 to $2.90, excluding the impact of impairment, restructuring and other charges and their related tax effects. This guidance does not include the impact from any pending or potential acquisitions. Actual sales and diluted earnings per share could vary from this guidance including as a result of the matters discussed under the "Forward-Looking Statements" section. The Company's 2017 diluted earnings per share guidance is provided on a non-GAAP basis only, due primarily to the variability and difficulty in making accurate forecasts and projections of impairment, restructuring and other charges and their related tax effects.

23.     On August 19, 2016, the Company filed its annual report on Form 10-K for the year ended June 30, 2016. The 10-K was signed by Defendant Edrick, and reaffirmed the Company's statements about its financial results contained in the press release issued on August 16, 2016.

24.     On August 24, 2017 OSI issued a press release entitled "OSI Systems Reports Fourth Quarter and Fiscal Year 2017 Financial Results." Therein, the Company, in relevant part, stated:

OSI Systems, Inc. (the "Company" or "OSI Systems") (NASDAQ: OSIS) today announced financial results for the quarter and fiscal year ended June 30, 2017.

"We are pleased to announce outstanding fiscal fourth quarter results. Each of our three operating divisions contributed to the successful conclusion of a strong fiscal year. Performance at the Security division, in particular, drove top-line growth and margin expansion," said Deepak Chopra, OSI Systems' Chairman and Chief Executive Officer.

The Company reported revenues of $252 million for the fourth quarter of fiscal 2017, an increase of 14% from the $221 million reported for the fourth quarter of fiscal 2016. Net income for the fourth quarter of fiscal 2017 was $1.5 million, or $0.08 per diluted share, compared to

net income of $5.9 million, or $0.30 per diluted share, for the fourth quarter of fiscal 2016. Non-GAAP net income for the fourth quarter of fiscal 2017 was $19.9 million, or $1.02 per diluted share, compared to non-GAAP net income for the fourth quarter of fiscal 2016 of $11.4 million, or $0.58 per diluted share.

For the fiscal year ended June 30, 2017, the Company reported revenues of $961 million, an increase of 16% as compared to the same period a year ago. Net income for fiscal 2017 was $21.1 million, or $1.07 per diluted share, compared to net income of $26.2 million, or $1.30 per diluted share, in the same period a year ago. Non-GAAP net income for the fiscal year ended June 30, 2017 was $58.8 million, or $2.99 per diluted share, compared to non-GAAP net income of $44.3 million, or $2.21 per diluted share, for the 2016 fiscal year.

During the three months ended June 30, 2017, the Company's book-to-bill ratio for equipment and related services (non-turnkey) was 1.4. As of June 30, 2017 the Company's backlog (measured as quantifiable purchase orders or contracts for which revenues are expected to be recognized within the next five years) was $738 million, compared to $623 million as of June 30, 2016. During fiscal 2017, cash flow generated from operations was $62.8 million and capital expenditures were $17.1 million.

Mr. Chopra stated, "Our Security division had an outstanding finish to the year. Fourth quarter revenues increased 33% to a record $147 million, $23 million of which was generated by our AS&E business, which we acquired in September 2016. Excluding the AS&E revenues, fourth quarter sales in our Security division increased 12% over sales in the same prior-year fiscal period. We leveraged our growth and benefitted from synergies from the AS&E acquisition to significantly improve our fourth quarter year-over-year operating income excluding the impact of impairment, restructuring and other charges."

Mr. Chopra further commented, "Our Optoelectronics and Manufacturing division closed the year with an outstanding operating margin due to operational improvements, together with a more favorable product mix and a migration to more profitable customers."

Mr. Chopra concluded, "Our Healthcare business continued to emerge from previous operating difficulties and a challenging hospital spending environment. During the fourth quarter, sales decreased by 3%; however, excluding the impact of a non-core healthcare business divestiture in February 2017, fourth quarter sales increased by 7% over the prior year. We believe that we are well-positioned for top-line growth and margin expansion heading into fiscal 2018."

**Fiscal Year 2018 Outlook**

Subject to risks described in this press release, the Company anticipates 8% to 12% growth in fiscal 2018 sales to $1,040,000,000 - $1,080,000,000. In addition, the Company anticipates 12% to 20% growth in non-GAAP earnings per diluted share to $3.35 - $3.60, excluding the fiscal 2018 impact of impairment, restructuring and other charges, amortization of acquired intangible assets and non-cash

interest expense, and their related tax effects. As a result of the matters discussed under "Forward-Looking Statements," actual sales and non-GAAP diluted earnings per share could vary from this guidance.

The Company's fiscal 2018 diluted earnings per share guidance is provided on a non-GAAP basis only. The Company does not provide a reconciliation of non-GAAP diluted EPS guidance on a forward-looking basis to GAAP diluted EPS, the most directly comparable GAAP measure, because it is unable to provide a meaningful or accurate compilation of reconciling items and certain information is not available.

25. On September 9, 2017, the Company filed its annual report on Form 10-K for the year ended June 30, 2017. The 10-K was signed by Defendant Edrick, and reaffirmed the Company's statements about its financial results contained in the press release issued on August 24, 2017.

26. The above statements identified in ¶¶17-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that OSI acquired the Albania concession through bribery or other illicit means; (2) that OSI transferred 49% of its project company associated with the Albania concession, S2 Albania SHPK, an entity purportedly worth millions, for consideration of less than $5.00; (3) that OSI engaged in other illegal acts, including improper sales and cash payments to government officials; (4) that these practices caused the Company to be vulnerable to potential civil and criminal liability, and adverse regulatory action; and (5) that, as a result of the foregoing, Defendants' statements about OSI's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

27. On December 6, 2017, Muddy Watters Research published a report on OSI entitled "OSIS: Rotten to the Core." Therein, Muddy Waters alleges that there was corruption in the 2013 award of OSI's Albania concession. Muddy waters claims that while the concession "has an estimated top line lifetime value of $150 million to $250 million," OSI "likely bribed somebody by giving half of it away for

$4.50" since "[t]here was an unannounced transfer of 49% of OSIS's project company, S2 Albania SHPK, to a holding company owned by an Albanian doctor, for consideration of less than $5.00." Muddy waters also alleges that "investigators' interviews with former employees yielded numerous anecdotes indicating OSIS is rotten to the core," including "knowledge of improper sales, cash payments to government officials, fraud in a significant contract, and that OSIS had narrowly avoided being debarred from doing business with the U.S. government." In greater part, the summary contained in the Muddy Waters report stated:

> We are short OSI Systems, Inc. (OSIS.US) because we think it is rotten to the core. We believe it obtained a major turnkey contract in Albania through corruption. It is likely that OSIS's accounts are misstated as a result. We believe the pricing of its Mexico turnkey contract does not stand up to scrutiny. We estimate that the contract is so rich, it accounted for more than 50% of OSIS's FY2017 EBITDA, despite being only 15% of revenue. Put another way, we estimate the Mexico contract's EBITDA margin is approximately 55%, which would mean the rest of OSIS has an EBITDA margin of a paltry 7.5%. This contract is up for renewal in 2018, and nonrenewal would seemingly have an enormous impact on OSIS's profits. It also implies that there is significant room for price adjustment downward, which could have a material impact on profits. Former employees' statements support our view that OSIS is rotting from the inside.

> Corruption in the 2013 award of OSIS's Albania concession is more obvious than a three-liter bottle of shampoo in your carryon luggage. The concession has an estimated top line lifetime value of $150 million to $250 million. However, OSIS either appears to value the total concession at $9.00 (yes, nine dollars), or they likely bribed somebody by giving half of it away for $4.50. There was an unannounced transfer of 49% of OSIS's project company, S2 Albania SHPK, to a holding company owned by an Albanian doctor, for consideration of less than $5.00. To be clear, this company (S2 Albania SHPK) is the company to which all rights and obligations under the turnkey contract award belong, so 49% of the company is presumably worth many millions of dollars. It appears to us that OSIS's accounts do not reflect the transfer – there are no deductions for non-controlling interests in the income statement, and February 2017 bond offering documents appear to show the subsidiary as 100% owned by OSIS.

> There have been numerous news reports in Albania accusing OSIS of corruptly obtaining the concession, and a senior member of parliament has called the award corrupt on the record. Amazingly, U.S. investors appear to have no inkling of these allegations.

> Turnkey contracts seem particularly well-suited to corruption. If a government is only purchasing scanning equipment, it is relatively easy for an internal auditor to spot an overpayment because the equipment is

somewhat commoditized. However, when bundling in various bespoke services, the pricing suddenly becomes much more opaque. Given this reality, it is perhaps not surprising that the turnkey contracts to date are in jurisdictions not known for their strong governance.

Beyond the turnkey contracts, investigators' interviews with former employees yielded numerous anecdotes indicating OSIS is rotten to the core. Former employees alleged a list of rot they experienced at Rapiscan, including their concern about possibly going to prison, knowledge of improper sales, cash payments to government officials, fraud in a significant contract, and that OSIS had narrowly avoided being debarred from doing business with the U.S. government.

This corrupt behavior puts at significant risk OSIS's Security Division contracts with U.S. and European government agencies. The only former employee who, in our view, made unreservedly positive comments about OSIS's compliance admitted that OSIS could lose significant government business if it engaged in corruption. Although this senior executive was at OSIS when the transfer of 49% of S2 Albania occurred, he professed no knowledge of the transaction. Either way, his professed lack of knowledge is telling – he was kept out of the loop, which we would not have expected given his role; or, he was not responding truthfully to the question.

In addition, OSIS could face liability under the Foreign Corrupt Practices Act ("FCPA"), which could be in the many hundreds of millions of dollars. The U.S. Department of Justice has been aggressive in prosecuting FCPA violations in both Republican and Democratic administrations. (FCPA settlements generate meaningful revenue generators for the federal government.) In October 2015, we announced we were short Telia Company (TELIA SS) because we believed the corruption issues in its business were significantly larger than had been disclosed, and that it would likely settle at $1 billion or more. Just three months ago (September 2017), Telia agreed to settle with the DOJ and assisting regulators for $966 million. At these levels, there is room for a FCPA settlement that would equal a significant chunk of OSIS's market cap.

(Footnotes omitted.)

28.     On this news, the Company's stock price fell $24.55 per share, or 29.2%, to close at $59.52 per share on December 6, 2017, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired OSI securities between August 21, 2013 and December 6, 2017, inclusive, and who were damaged thereby (the "Class"). Excluded from the

Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, OSI's common stock actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of OSI shares were traded publicly during the Class Period on the NASDAQ.  As of October 26, 2017, OSI had 18,968,450 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by OSI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business,

operations, and prospects of OSI; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

34.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

35.    The market for OSI's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, OSI's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired OSI's securities relying upon the integrity of the market price of the Company's securities and market information relating to OSI, and have been damaged thereby.

36.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of OSI's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about OSI's business, operations, and prospects as alleged herein.

37.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to

be made a series of materially false and/or misleading statements about OSI's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

38.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.     During the Class Period, Plaintiff and the Class purchased OSI's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding OSI, their control over, and/or receipt and/or modification of OSI's allegedly materially misleading misstatements and/or their associations with the Company which made

them privy to confidential proprietary information concerning OSI, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41.     The market for OSI's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, OSI's securities traded at artificially inflated prices during the Class Period. On October 12, 2017, the Company's stock price closed at a Class Period high of $95.76 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of OSI's securities and market information relating to OSI, and have been damaged thereby.

42.     During the Class Period, the artificial inflation of OSI's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about OSI's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of OSI and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for OSI's securities was an efficient market for the following reasons, among others:

(a)     OSI stock met the requirements for listing, and was listed and actively

traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, OSI filed periodic public reports with the SEC and/or the NASDAQ;

(c)    OSI regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    OSI was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44.    As a result of the foregoing, the market for OSI's securities promptly digested current information regarding OSI from all publicly available sources and reflected such information in OSI's stock price. Under these circumstances, all purchasers of OSI's securities during the Class Period suffered similar injury through their purchase of OSI's securities at artificially inflated prices and a presumption of reliance applies.

45.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material

misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of OSI who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase OSI's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth

herein.

49.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for OSI's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about OSI's financial well-being and prospects, as specified herein.

51.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of OSI's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about OSI and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of

these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing OSI's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of OSI's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading

statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired OSI's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that OSI was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their OSI securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     Individual Defendants acted as controlling persons of OSI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false

financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61. As set forth above, OSI and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

1    (c)    Awarding Plaintiff and the Class their reasonable costs and expenses
2   incurred in this action, including counsel fees and expert fees; and
3    (d)    Such other and further relief as the Court may deem just and proper.
4   ### **JURY TRIAL DEMANDED**
5   Plaintiff hereby demands a trial by jury.
6
7   Dated:  December 7, 2017          GLANCY PRONGAY & MURRAY LLP
8
9                                      By:  *s/ Robert V. Prongay*
10                                     Lionel Z. Glancy
                                       Robert V. Prongay
11                                     Lesley F. Portnoy
                                       Charles H. Linehan
12                                     1925 Century Park East, Suite 2100
13                                     Los Angeles, California 90067
                                       Telephone: (310) 201-9150
14                                     Facsimile: (310) 201-9160
15                                     Email: rprongay@glancylaw.com
16
17                                     *Counsel for Plaintiff*
18
19
20
21
22
23
24
25
26
27
28

**SWORN CERTIFICATION OF PLAINTIFF**

**OSI SYSTEMS, INC. SECURITIES LITIGATION**

I, Cory Longo individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.    I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.    I did not purchase the OSI Systems, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.    I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.    My transactions in OSI Systems, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.    I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.    I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

| | |
|---|---|
| 12/6/2017 | DocuSigned by: *[signature]* AED5F52573244C7... |
| Date | Cory Longo |

**Cory Longo's Transactions in
OSI Systems, Inc. (OSIS)**

| Date | Transaction Type | Quantity | Unit Price |
|------------|------------------|----------|------------|
| 10/25/2017 | Bought | 20 | $90.5000 |