1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CORY LONGO, individually and on behalf of all others similarly situated, et al., | Case No. CV 17-8841 FMO (SKx) |
| Plaintiffs, | **ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| OSI SYSTEMS, INC., et al., | |
| Defendants. | |

Having reviewed and considered all the briefing filed with respect to lead plaintiff's Unopposed Motion for (I) Preliminary Approval of Proposed Settlement and (II) Class Certification for Settlement Purposes (Dkt. 125, "Motion"), and the oral argument presented to the court on December 2, 2021, the court concludes as follows.

## BACKGROUND

On December 7, 2017, Cory Longo ("Longo") filed this action on behalf of himself and all others similarly situated against OSI Systems, Inc. ("OSI"), Deepak Chopra ("Chopra") and Alan Edrick ("Edrick"), asserting violations of the Securities Exchange Act and associated regulations. (See Dkt. 1, Complaint at ¶¶ 12-15, 47-61). Three related actions were filed shortly thereafter. (See Dkt. 35, Court's Order of March 1, 2018, at 2-3). On March 1, 2018, the court consolidated the actions and appointed the Arkansas Teacher Retirement System ("ATRS") as lead plaintiff and Kessler Topaz Metlzer & Check, LLP ("KTMC") as lead counsel. (Id. at 16).

1    On June 13, 2019, ATRS and named plaintiff John A. Prokop (collectively, "plaintiffs") filed

2    the operative First Amended Consolidated Class Action Complaint [] ("FAC"), asserting two federal

3    securities claims on behalf of a class of persons who purchased or acquired OSI stock and

4    convertible notes between August 21, 2013, and February 1, 2018: (1) § 10(b) of the Securities

5    Exchange Act of 1934 ("Securities Exchange Act"), 15 U.S.C. §§ 78j et seq., and Rule 10b-5

6    promulgated thereunder, 17 C.F.R. § 240.10b-5, against OSI, Chopra, Edrick, and Ajay Mehra

7    ("Mehra") (collectively, "defendants"); and (2) § 20(a) of the Securities Exchange Act, 15 U.S.C.

8    §§ 78t et seq., against  defendants Chopra, Edrick, and Mehra.  (See Dkt. 76, FAC at p. 1 & ¶¶

9    306-22).  The FAC alleges that defendants made materially false or misleading statements about

10   OSI's "turnkey" business and its contract with the Albanian government for equipment-based

11   security services.  (See id. at ¶¶ 8-14, 71-105).  Plaintiffs seek damages, attorney's fees and

12   costs, and "such equitable, injunctive or other relief that the Court may deem just and proper."  (Id.

13   at Prayer for Relief).

14   After extensive motion practice, fact discovery, expert consultations, extensive arm's-length

15   negotiations, and a mediation session that involved two rounds of briefing, (see Dkt. 125-1,

16   Memorandum in Support of [ ] Unopposed Motion [ ] ("Memo.") at 3-4, 12-15), the parties reached

17   a settlement in October 2021.  (Dkt. 125-4, Stipulation and Agreement of Settlement ("Settlement

18   Agreement") at 1, 3).  The parties have defined the settlement class as

19               all persons and entities who purchased or otherwise acquired OSI common

20               stock or 1.25% convertible senior notes due 2022 (collectively, "OSI

21               Securities") between August 21, 2013 and February 1, 2018, inclusive

22               ("Class Period"), and were damaged thereby.

23   (Id. at ¶ 1(vv)).

24   Pursuant to the settlement, defendants will pay a gross settlement amount of $12.5 million

25   which will be used to pay eligible class members, settlement administration costs, taxes,[1] and

26

_____

27     [1]  The payment of taxes includes "(i) all federal, state, and/or local taxes of any kind (including
any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the

28   expenses and costs incurred by Lead Counsel in connection with determining the amount of, and

1  attorney's fees and costs.  (Dkt. 125-4, Settlement Agreement at ¶¶ 9-10).  The settlement states

2  that lead counsel will apply for an award of attorney's fees "not to exceed 25% of the Settlement

3  Fund," which would equate to $3,125,000, and costs not to exceed $200,000.[2]  (Id. at ¶ 16).  Also,

4  the proposed claims administrator, A.B. Data, Ltd. ("A.B. Data"), shall be paid no more than

5  $200,000 from the gross settlement amount.  (Id. at ¶¶ 1(g), 15).

6       In its Motion, lead plaintiff seeks an order:  (1) provisionally certifying the proposed

7  settlement class; (2) appointing lead plaintiff ATRS as class representative and lead counsel

8  KTMC as class counsel; (3) preliminarily approving the proposed settlement; (4) appointing A.B.

9  Data as claims administrator; (5) approving and ordering dissemination of the proposed class

10  notice and forms; and (6) scheduling a final approval hearing.  (See Dkt. 125, Motion at 1); (Dkt.

11  125-1, Memo. at 2, 25).

12                               **LEGAL STANDARD**

13  I.     CLASS CERTIFICATION.

14       At the preliminary approval stage, the court "may make either a preliminary determination

15  that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

16  as to the appropriateness of class certification."[3]  Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

17  *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc.,

18

---

19  paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax

20  attorneys and accountants)."  (Dkt. 125-4, Settlement Agreement at ¶ 1(aaa)).

21    [2] Lead plaintiff states there is no clear sailing agreement with respect to attorney's fees.  (See Dkt. 125-1, Memo. at 5 n. 5).  The relevant provision in the settlement agreement states that "Lead

22  Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Counsel other than what is set forth in this

23  Stipulation." (Dkt. 125-4, Settlement Agreement at ¶ 16).  Nonetheless, the court may deem the settlement agreement's provision regarding attorney's fees as an implicit clear sailing agreement

24  at the final approval stage in light of Ninth Circuit's definition of a clear sailing agreement as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum

25  value."   In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 940 n. 6 (9th Cir. 2011)

26  ("Bluetooth"); see also Roes, 1-2 v. SFBSC Management, LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to

27  a certain fee request by class counsel").

28    [3] All "Rule" references are to the Federal Rules of Civil Procedure.

2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  In the settlement context, a court must pay "undiluted, even heightened, attention" to class certification requirements.  See Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("Dukes").  Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

1          (2) the party opposing the class has acted or refused to act on grounds that

2          apply generally to the class, so that final injunctive relief or corresponding

3          declaratory relief is appropriate respecting the class as a whole; or

4          (3) the court finds that the questions of law or fact common to class members

5          predominate over any questions affecting only individual members, and that

6          a class action is superior to other available methods for fairly and efficiently

7          adjudicating the controversy. The matters pertinent to these findings include:

8               (A) the class members' interests in individually controlling the

9               prosecution or defense of separate actions;

10              (B) the extent and nature of any litigation concerning the controversy

11              already begun by or against class members;

12              (C) the desirability or undesirability of concentrating the litigation of the

13              claims in the particular forum; and

14              (D) the likely difficulties in managing a class action.

15 Fed. R. Civ. P. 23(b)(1)-(3).

16       The party seeking class certification bears the burden of demonstrating that the proposed

17 class meets the requirements of Rule 23. <u>See</u> <u>Dukes</u>, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party

18 seeking class certification must affirmatively demonstrate his compliance with the Rule – that is,

19 he must be prepared to prove that there are <u>in</u> <u>fact</u> sufficiently numerous parties, common

20 questions of law or fact, etc.").  However, courts need not consider Rule 23(b)(3)'s requirements

21 regarding manageability of the class action, as settlement obviates the need for a manageable

22 trial. <u>See</u> <u>In re Hyundai and Kia Fuel Econ. Litig.</u>, 926 F.3d 539, 556-57 (9th Cir. 2019) (<u>en</u> <u>banc</u>)

23 ("The criteria for class certification are applied differently in litigation classes and settlement

24 classes.  In deciding whether to certify a litigation class, a district court must be concerned with

25 manageability at trial.  However, such manageability is not a concern in certifying a settlement

26 class where, by definition, there will be no trial.").

27

28

II.     FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

"If the [settlement] proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval. Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Spann, 314 F.R.D. at 319; see 4 Newberg on Class Actions, § 13:10 (5th ed.) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset."); see, e.g., Fed. R. Civ. P. 23(e)(1)(A) ("The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.").  In determining whether a settlement is fair, reasonable, and adequate, the newly revised Rule 23(e)(2) standard requires the court to evaluate whether:  "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed

1  award of attorney's fees, including timing of payment; and (iv) any agreement required to be

2  identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to

3  each other."[4]  Fed. R. Civ. P. 23(e)(2).

4       "At this stage, the court may grant preliminary approval of a settlement and direct notice

5  to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive

6  negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment

7  to class representatives or segments of the class; and (4) falls within the range of possible

8  approval." Spann, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v. Samsung

9  Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) ("Preliminary approval is appropriate if

10  the proposed settlement appears to be the product of serious, informed, non-collusive

11  negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

12  representatives or segments of the class, and falls within the range of possible approval.") (internal

13  quotation marks omitted); see also 2018 Adv. Comm. Notes to Amendments to Rule 23 (stating

14  that "[t]he goal of t[he Rule 23(e)] amendment [wa]s not to displace any factor" that courts

15  considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and

16  substance that should guide the decision whether to approve the proposal"); 4 Newberg on Class

17  Actions, § 13:10 (5th ed.) ("In 2018, Congress codified this approach into Rule 23.").

18

19

20

21

22

---

23   [4]  Settlement approval requires the court to scrutinize all settlements, whether negotiated prior
24  to or after class certification, for conflicts of interest or signs of collusion, including "(1) when
     counsel receive a disproportionate distribution of the settlement, or when the class receives no
25  monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a
     'clear sailing' arrangement[;]" and "(3) when the parties arrange for fees not awarded to revert to
26  defendants rather than be added to the class fund[.]"  Bluetooth, 654 F.3d at 947 (internal
     quotation marks omitted); see Fed. R. Civ. P. 23(e)(2). The court will assess these factors in
27  connection with final approval.  As noted above, the court may treat the attorney's fee provision
     in the settlement agreement, (see Dkt. 125-4, Settlement Agreement at ¶ 16), as a clear sailing
28  agreement at the final approval stage, so counsel should address that issue on final approval.

**DISCUSSION**

I.     CLASS CERTIFICATION.

    A.     Rule 23(a) Requirements.

        1.     **Numerosity**.

The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable."  Ahlman v. Barnes, 445 F.Supp.3d 671, 684 (C.D. Cal. 2020).  "The Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement."  Makaron v. Enagic USA, Inc., 324 F.R.D. 228, 232 (C.D. Cal. 2018).

Here, the class is so numerous that joinder is impracticable.  According to lead plaintiff, the average weekly trading volume for OSI common stock and OSI 1.25% convertible senior notes due 2022 was 1,041,923 shares and 10,000 notes, "making it clear that hundreds if not thousands of investors purchased OSI Securities during the Class Period."  (Dkt. 125-1, Memo. at 6-7); see, e.g., In re Cooper Cos. Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year[,]" thereby satisfying numerosity.); Nguyen v. Radient Pharm. Corp., 287 F.R.D. 563, 569 (C.D. Cal. 2012) (same).

        2.     **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2).  Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of

classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by Castillo v. Bank of Am., NA, 980 F.3d 723 (9th Cir. 2020); Mazza, 666 F.3d at 589. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of plaintiff's claims. For example, common questions include whether: (1) defendants' statements were false or misleading and whether such statements were material; (2) defendants acted with scienter; (3) the prices of OSI securities were artificially inflated as a result of defendants' statements or omissions (and by how much); (4) defendants' misleading statements or omissions caused the losses suffered by Settlement Class; and (5) defendants Chopra, Edrick, and Mehra were controlling persons of OSI. (See Dkt. 125-1, Memo. at 7). Under the circumstances, the court finds that plaintiff has satisfied the commonality requirement.

3.    **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted). To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class."). "The test

of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks omitted).

Here, the claims of the lead plaintiff are typical of the claims of the class. Plaintiff's claims arise from the same nucleus of facts as those of the class and are based on the same legal theory, i.e., that defendants violated the Securities Exchange Act and regulations issued under that Act by making false and misleading statements that artificially inflated the price of OSI securities. (See Dkt. 125-1, Memo. at 7-8); see, e.g., Tanne v. Autobytel, Inc., 226 F.R.D. 659, 667 (C.D. Cal. 2005) ("Here, [lead plaintiff's] claims are typical because, just like other class members, he: (1) purchased or acquired Autobytel securities during the Class period, (2) at prices alleged to be artificially inflated by defendants' materially false and misleading statements and/or omissions, and (3) suffered damage as a result."); Brown v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal. 2012) (typicality satisfied where plaintiff's claims were based on "the same event or practice or course of conduct that [gave] rise to the claims of other class members and . . . are based on the same legal theory") (internal quotation marks omitted). Additionally, the court is not aware of any facts that would subject the class representative "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

4. **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (internal quotation marks omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id.

10

1      Here, the proposed class representative, who has no individual claims separate from the

2  class claims, (see, generally, Dkt. 76, FAC at ¶¶ 306-322), does not appear to have any conflicts

3  of interest with the absent class members. (See Dkt. 125-1, Memo. at 8-9, 12-13); see, e.g.,

4  Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent

5  conflict of interest between the named Plaintiffs' claims and those of the other Class Members' –

6  particularly because the named Plaintiffs have no separate and individual claims apart from the

7  Class."). Moreover, as noted by the deputy director of ATRS, ATRS has adequately represented

8  the settlement class and vigorously prosecuted the settlement class' claims, "consistent with its

9  strong interest in the outcome of this litigation and the exercise of its fiduciary duties to the

10  Settlement Class[.]" (Dkt. 125-6, Declaration of Rod Graves, Deputy Director of Arkansas Teacher

11  Retirement System [] ("ATRS Decl.") at ¶ 8). In short, "[t]he adequacy-of-representation

12  requirement is met here because Plaintiff[] ha[s] the same interests as the absent Class

13  Members[.]" Barbosa, 297 F.R.D. at 442.

14      Finally, as noted earlier, adequacy "also factors in competency and conflicts of class

15  counsel." Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251 n. 20. Here, the Settlement

16  Agreement provides that the court appoint lead counsel Kessler Topaz Meltzer & Check, LLP as

17  class counsel. (See Dkt. 125-4, Settlement Agreement at ¶¶ 1-2). Having reviewed the

18  declaration of proposed class counsel and the firm's resume, (see Dkt. 125-3, Declaration of Eli

19  R. Greenstein in Support of Lead Plaintiff's Unopposed Motion [] at ¶ 9); (Dkt. 125-5, Exh. 2, Firm

20  Resume), the court finds that lead plaintiff's counsel are competent, and there are no issues as

21  to the adequacy of representation. See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the

22  competency of the Class Counsel, and the Court finds that Plaintiffs are represented by

23  experienced and competent counsel who have litigated numerous class action cases.").

24      B.    Rule 23(b) Requirements.

25      Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

26  be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal

27  quotation marks omitted). The rule requires two different inquiries, specifically a determination as

28  to whether: (1) "questions of law or fact common to class members predominate over any

1   questions affecting only individual members[;]" and (2) "a class action is superior to other available

2   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see

3   Spann, 314 F.R.D. at 321-22.

4               1.    **Predominance**.

5        "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the

6   common and individual issues in the case, and tests whether the proposed class is sufficiently

7   cohesive to warrant adjudication by representation." Abdullah, 731 F.3d at 964 (internal quotation

8   marks omitted); see also Amchem, 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3)

9   predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

10  adjudication by representation."); In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d

11  953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the balance

12  between individual and common issues.").  "When common questions present a significant aspect

13  of the case and they can be resolved for all members of the class in a single adjudication, there

14  is clear justification for handling the dispute on a representative rather than on an individual basis."

15  Hanlon, 150 F.3d at 1022 (internal quotation marks omitted); Abdullah, 731 F.3d at 964 ("Rule

16  23(b)(3) requires [only] a showing that questions common to the class predominate, not that those

17  questions will be answered, on the merits, in favor of the class.") (internal quotation marks

18  omitted).  Additionally, the class damages must be sufficiently traceable to plaintiff's liability case.

19  See Comcast Corp. v. Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

20        For the reasons discussed above, see supra at § I.A.2., the court is persuaded that

21  common questions predominate over individual questions.  See Robinson v. Paramount Equity

22  Mortg., LLC, 2017 WL 117941, *6 (E.D. Cal. 2017) ("[T]he common questions discussed in

23  conjunction with Rule 23(a)(2) also predominate over any individual issues.").  Indeed, the single,

24  overwhelming common question of whether defendants violated the Securities Exchange Act and

25  associated regulations by making misrepresentations about OSI's "turnkey" business and its

26  Albanian contracts predominates over any individual questions.  See, e.g., Amchem, 521 U.S.

27  at 625, 117 S.Ct. at 2250 ("Predominance is a test readily met in certain cases alleging consumer

28  or securities fraud or violations of the antitrust laws."); Hefler v. Wells Fargo & Co., 2018 WL

4207245, *4 (N.D. Cal. 2018) ("Whether Defendants' statements were false, material, made with the requisite scienter, and caused the class members' losses are significant aspects of the case and susceptible to common proof."); In re Extreme Networks, Inc. Sec. Litig., 2019 WL 3290770, *5 (N.D. Cal. 2019) (finding predominance where "[t]he common questions in this case which would be subject to common proof include whether Defendants misrepresented material facts or omitted material facts for publicly traded stocks in violation of the law, whether Defendants had a duty to disclose alleged material omissions or acted with scienter, and whether the market price of Extreme's common stock during the class period was artificially inflated due to the alleged material omissions and/or misrepresentations").  Finally, the relief sought applies to all class members and is traceable to plaintiff's liability case.  See Comcast, 569 U.S. at 35, 133 S.Ct. at 1433.  In short, the court is persuaded that "[a] common nucleus of facts and potential legal remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

        2.    **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, plaintiff does not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  (See, generally, Dkt. 76, FAC).  The alternative method of resolution – pursuing individual claims for a relatively modest amount of damages – would likely never be brought, as "litigation costs would dwarf potential recovery."  Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative

1  class members' potential individual monetary recovery, class certification may be the only feasible
2  means for them to adjudicate their claims.  Thus, class certification is also the superior method
3  of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011)
4  ("Given the small size of each class member's claim, class treatment is not merely the superior,
5  but the only manner in which to ensure fair and efficient adjudication of the present action."); In
6  re VeriSign, Inc. Sec. Litig., 2005 WL 7877645, *9 (N.D. Cal. 2005) ("Class actions are particularly
7  well-suited in the context of securities litigation, wherein geographically dispersed shareholders
8  with relatively small holdings would otherwise have difficulty in challenging wealthy corporate
9  defendants.").  In short, "there is no evidence that Class members have any interest in controlling
10 prosecution of their claims separately nor would they likely have the resources to do so." Munoz
11 v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

12      The second factor is "the extent and nature of any litigation concerning the controversy
13 already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class
14 member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P.
15 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling
16 their own litigation[.]"  2 Newberg on Class Actions, § 4:70 (5th ed.) (emphasis omitted).  Here,
17 with one exception,[5] there is no indication that any class member is involved in any other litigation
18 concerning the claims in this case.  (See, generally, Dkt. 125, Motion).

19      The third factor is "the desirability or undesirability of concentrating the litigation of the
20 claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class
21 action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the
22 third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444;  see
23 Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class
24 certification, a district court need not inquire whether the case, if tried, would present intractable

25

26      [5] Pursuant to the Settlement Agreement, defendants' released claims "shall not include . . . any
27 claims asserted in any derivative action, including, without limitation, the claims asserted in Riley
   v. Chopra, et al., Case No. CV 18-03371 FMO (SKx) (C.D. Cal.), which has been appealed to the
28 Ninth Circuit[.]"  (Dkt. 125-4, Settlement Agreement at ¶ 1(n)).

1  management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re

2  Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation

3  classes and settlement classes.  In deciding whether to certify a litigation class, a district court

4  must be concerned with manageability at trial.  However, such manageability is not a concern in

5  certifying a settlement class where, by definition, there will be no trial.").

6        The only factors in play here weigh in favor of class treatment.  Further, the filing of

7  separate suits by potentially thousands of other class members "would create an unnecessary

8  burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court

9  finds that the superiority requirement is satisfied.

10  II.    FAIRNESS,  REASONABLENESS,  AND  ADEQUACY  OF  THE  PROPOSED

11       SETTLEMENT.

12       A.    The Settlement Is the Product of Arm's-Length Negotiations.

13       Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was

14  negotiated at arm's length.  However, "the court's intrusion upon what is otherwise a private

15  consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

16  necessary to reach a reasoned judgment that the agreement is not the product of fraud or

17  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as

18  a whole, is fair, reasonable and adequate to all concerned."  Rodriguez v. W. Publ'g Corp., 563

19  F.3d 948, 965 (9th Cir. 2009) (internal quotation marks omitted).

20       Here, the parties "were prepared to litigate their positions through trial and appeal if a

21  settlement had not been reached."  (See Dkt. 125-1, Memo. at 14).  Plaintiffs filed two amended

22  complaints, (Dkts. 46, 76), and the parties litigated two motions to dismiss.  (Dkts. 71, 111).  The

23  parties also conducted "substantial fact discovery."  (See Dkt. 125-1, Memo. at 3.  And prior to

24  a mediation session before retired Judge Layne R. Phillips, the parties "exchanged detailed

25  mediation briefing statements addressing liability and damages issues." (Id. at 13).  Although the

26  parties did not reach an agreement at that mediation session, "they continued their negotiations

27  with the assistance of Judge Phillips," and "ultimately accept[ed] a mediator's recommendation

28  to settle the Action for $12.5 million." (Id.).  Finally, class counsel, based on their review of the

1   record, have concluded that the settlement is "fair, reasonable, and applies in an equitable manner

2   to all Settlement Class Members."  (Id. at 24).

3          Based on the evidence and record before the court, the court is persuaded that the parties

4   thoroughly investigated and considered their own and the opposing parties' positions.  The parties

5   had a sound basis for measuring the terms of the settlement against the risks of continued

6   litigation, and there is no evidence that the settlement was "the product of fraud or overreaching

7   by, or collusion between, the negotiating parties[.]"  Rodriguez, 563 F.3d at 965 (internal quotation

8   marks omitted).

9          B.      The Amount Offered in Settlement Falls Within a Range of Possible Judicial

10                 Approval and is a Fair and Reasonable Outcome for Class Members.

11                 1.      **Recovery for Class Members.**

12          As described above, class members will share a gross settlement amount of $12.5 million

13   dollars.[6]  (Dkt. 125-4, Settlement Agreement at ¶ 9).  Lead plaintiff's damages consultant

14   estimates that total potential damages were approximately $121.4 million to $246 million,

15   depending on whether defendants' arguments prevailed.  (See Dkt. 125-1, Memo. at 17); (Dkt.

16   130, Supplemental Submission in Support of Lead Plaintiff's Unopposed Motion [] ("Supp.

17   Submission") at 3); (Dkt. 130-1, Declaration of Chad Coffman, CFA Regarding Calculation of

18   Settlement Class's Estimated Damages ("Coffman Decl.") at ¶¶ 12-15).  Thus, according to

19   plaintiffs' damages consultant, the settlement represents between 5% and 10% of the settlement

20   class' estimated recoverable damages.   (See Dkt. 125-1, Memo. at 17); (Dkt. 130, Supp.

21   Submission at 3).  This amount appears to be in line with the median recovery in comparable

22   cases.  (Dkt. 125-1, Memo. at 17) (citing Laarni T. Bulan & Laura E. Simmons, Securities Class

23   _____

24          [6]   The Settlement Agreement provides that "[t]o the extent any monies remain in the Net
     Settlement Fund by reason of uncashed checks, or otherwise, nine (9) months after the initial
25   distribution, if Lead Counsel, in consultation with the Claims Administrator, determine that it is
     cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds. . . .  At
26   such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund
     is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit
27   organization(s), to be recommended by Lead Counsel and approved by the Court."  (Dkt. 125-4,
     Settlement Agreement, Appendix A, at ¶ 10).
28

1    Action Settlements: 2020 Review and Analysis, Cornerstone Research, Figure 5 at p. 6 (2020),

2    http://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-

3    2020-Review-and-Analysis).

4           The  settlement amount in this case will result in compensation of approximately $0.72 per

5    eligible share of OSI common stock and $6.14 per eligible OSI Bond.  (See Dkt. 125-4, Exh. A-1,

6    Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Final Approval Hearing; (III)

7    Motion for Attorneys' Fees and Litigation Expenses ("Notice") at p. 2).  Plaintiff contends that the

8    settlement amount is fair and reasonable given the substantial litigation risks.  In particular, plaintiff

9    faces the risk of failing to prove loss causation, i.e., failing to prove that defendants' fraudulent

10   conduct was the reason OSI's stock price became artificially inflated, and that exposure of

11   defendants' scheme, rather than other factors, led the stock price to drop precipitously.  (See Dkt.

12   125-1, Memo. at 16-17); (Dkt. 126, Defendants' Brief in Support of [] Motion for Preliminary

13   Approval of Settlement Agreement at 5); (Dkt. 130, Supp. Submission at 2-3); see, e.g., In re

14   Celera Corp. Sec. Litig., 2015 WL 1482303, *5 (N.D. Cal. 2015) ("As with any securities litigation

15   case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial.").  Plaintiff

16   also notes that conducting discovery in Albania "would have been time consuming . . . [and]

17   prohibitively expensive, especially in light of Albania's decision to opt-out of the Hague

18   Convention's pretrial discovery provision."  (Dkt. 125-1, Memo. at 16).

19          Under the circumstances, the court is persuaded that the settlement relief is fair,

20   reasonable, and adequate, particularly when taking into account the costs, risks, and delay of trial

21   and appeal.  See Fed. R. Civ. P. 23(e)(2)(C)(i).  The costs and risks of continued litigation are

22   significant in this case.  Weighed against those costs and risks, and coupled with the delays

23   associated with continued litigation, the court is persuaded that the relief provided to the class is

24   adequate and falls within the range of reasonableness.  See, e.g., Vataj v. Johnson, 2021 WL

25   5161927, *6 (N.D. Cal. 2021) (finding that $10 million settlement that represented "2% aggregate

26   recovery [was] consistent with the 2–3% average recovery that the parties identified in other

27   securities class action settlements"); In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal.

28   2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected

1  value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact

2  that a proposed settlement may only amount to a fraction of the potential recovery does not, in and

3  of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.")

4  (internal quotation marks omitted).

5          2.    **Release of Claims**.

6          The court must also consider whether a class action settlement contains an overly broad

7  release of liability.  See 4 Newberg on Class Actions § 13:15 (5th ed.) ("Beyond the value of the

8  settlement, courts [have] rejected preliminary approval when the proposed settlement contains

9  obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v.

10  Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of

11  proposed settlement that provided defendant a "nationwide blanket release" in exchange for

12  payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any

13  other benefit to the class).  Here, class members who do not exclude themselves from the

14  settlement will release

15          all claims and causes of action of every nature and description, whether

16          known or unknown claims, whether arising under federal, state, local,

17          common, statutory, administrative or foreign law, or any other law, rule or

18          regulation, at law or in equity, whether class or individual in nature, whether

19          accrued or unaccrued, whether liquidated or unliquidated, whether matured

20          or unmatured, that Lead Plaintiff, named plaintiff John A. Prokop, or any

21          other member of the Settlement Class: (i) asserted in the Action or (ii) could

22          have asserted in any court or forum that arise out of or are based upon the

23          same allegations, facts, representations, or omissions set forth in the Action

24          and that relate to, or are in connection with, the purchase or acquisition of

25          OSI Securities during the Class Period.  Lead Plaintiff's Released Claims

26          shall not include: (i) any claims relating to the enforcement of the Settlement;

27          (ii) any claims asserted in any derivative action, including, without limitation,

28          the claims asserted in Riley v. Chopra, et al., No. 2:18-cv-03371-FMO (Skx)

(C.D. Cal.), which has been appealed to the Ninth Circuit; and (iii) any claims
of any person or entity who or which submits a request for exclusion from the
Settlement Class that is accepted by the Court.

(Dkt. 125-4, Settlement Agreement at ¶ 1(z)).  The Release also contains a limited waiver of rights under California Civil Code § 1542 and similar statutes; it is limited to claims that "arise out of or are based upon the same allegations, facts, representations, or omissions set forth in the Action[.]" (Id. at ¶¶ 1(z) & 7); (see also Dkt. 125-1, Memo. at 4-5).

With the understanding that, under the Release, the settlement class members are not giving up any claims unrelated to those asserted in this action, the court finds that the Release adequately balances fairness to absent class members and recovery for the class with defendants' business interest in ending this litigation with finality.  See Hess v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted); Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C. The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other."  As an initial matter, the court finds that the settlement does not improperly grant preferential treatment to the class representative.  (See, generally, Dkt. 125-4, Settlement Agreement); (see also Dkt. 125-1, Memo., Exh. 1 at 1).  Plaintiff does not plan to seek an incentive award, or a "payment[] to class representatives for their service to the class in bringing the lawsuit."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

With respect to lead plaintiff's proposed plan of allocation, class members who submit valid claims will receive a pro rata distribution from the settlement fund based on when they bought and

sold OSI Securities. (See Dkt. 125-4, Appendix ("Appx.") A, Proposed Plan of Allocation of Net Settlement Fund Among Authorized Claimants ("Allocation Plan") at ¶¶ 1-3, 9); (see also Dkt. 125-1, Memo. at 18-19, 24); (Dkt. 125-4, Settlement Agreement at ¶ 22).  The allocation plan was developed with lead plaintiff's damages consultant to "ensure[] Settlement Class Members' recoveries are based upon the relative losses they sustained, and that eligible Settlement Class Members will receive distributions calculated in the same manner."  (Dkt. 125-1, Memo. at 19). Under the circumstances here, the court finds that the settlement treats class members equitably. See, e.g., Hefler, 2018 WL 6619983, at *2 ("[C]lass members who submit timely claims will receive payments on a pro rata basis based on the date(s) class members purchased and sold Wells Fargo common stock, as well as the total number and amount of claims filed."); Extreme Networks, 2019 WL 3290770, at *8 ("Under the Agreement, class members who have submitted timely claims will receive payments on a pro rata basis based on the value of their original claim and the number of claims filed.").

        D.    Class Notice and Notification Procedures.

        "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

        A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted).  Settlement notices "are sufficient if they inform the class members of

the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]"  Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (internal quotation marks omitted); see, e.g., Wershba v. Apple Comput., Inc., 91 Cal.App.4th 224, 252 (2001), disapproved of on other grounds by Hernandez v. Restoration Hardware, Inc., 4 Cal.5th 260, 269 (2018) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class.  See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") also imposes notice requirements.  See 15 U.S.C. § 78u-4(a)(7).  "Under the PSLRA, any proposed final settlement agreement 'shall include each of the following statements, along with a cover page summarizing the information contained in such statements:' a statement of plaintiff recovery, a statement of potential outcomes of the case, a statement on attorneys' fees or costs, identification of lawyers' representatives, reasons for the settlement, other information as required by the court."  Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, *8 (C.D. Cal. 2019) (quoting 15 U.S.C. § 78u-4(a)(7)).

Here, the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Final Approval Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") describes the nature of the action and the claims alleged.  (See Dkt. 125-4, Exh. A-1, Notice at p. 1 & ¶¶ 4-18); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the definition of the class, (see Dkt. 125-4, Exh. A-1, Notice at ¶ 24); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the distribution of that amount, and the release.  (See Dkt. 125-4, Exh. A-1, Notice at p. 2, ¶¶ 25-33, 37, 45); (Id., Appx. A, Allocation Plan).  The

Notice includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendant. (See Dkt. 125-4, Exh. A-1, Notice at p. 3-4 & ¶¶ 25, 28, 47-48, 54-58); see also Fed. R. Civ. P. 23(c)(2)(B)(v) & (vi).  Finally, the Notice explains the procedures for objecting to the settlement and provides information about the Final Fairness Hearing.  (See Dkt. 125-4, Exh. A-1, Notice at p. 4 & ¶¶ 27, 51-58).

The notice packets will consist of notice of the proposed settlement, final approval hearing, and motion for attorney's fees and litigation expenses, as well as the proof of claim and release form ("Claim Form") and the exclusion request form.  (See Dkt. 125-7, Schacter Decl. at ¶ 2); (Dkt. 125-1, Motion at 21-22); (see also Dkt. 125-4, Exh. A-1, Notice); (id., Exh. A-2, Claim Form); (id., Exh. A-3, Exclusion Request Form).  A.B. Data, who the parties seek to have appointed as settlement administrator, (see Dkt. 125-4, Settlement Agreement at ¶ 1(g)); (see also Dkt. 125-7, Declaration of Eric Schachter of A.B. Data, Ltd. Regarding Notice and Administration ("Schacter Decl.")), will send notice packets via first-class mail and, where possible, email to all class members who can be identified by reasonable effort, as well as brokerage firms and other third parties who regularly act as nominees for beneficial purchasers of securities.  (See Dkt. 125-7, Schacter Decl. at ¶¶ 4-5).  A.B. Data will also publish a summary notice in The Wall Street Journal and PR Newswire, (see id. ¶ 2), and establish a settlement website that "will include general information about the Action and the Settlement; highlight important dates and deadlines; host key documents related to the Action, including downloadable versions of the Notice and Claim Form; and have functionality for Settlement Class Members to submit their Claim Forms online." (Id. at ¶ 8).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.  Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and comply with the requirements of due process.

E.      Summary.

The court's preliminary evaluation of the Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litigation § 21.632 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.   Plaintiff's Unopposed Motion for (I) Preliminary Approval of Proposed Settlement and (II) Class Certification for Settlement Purposes **(Document No. 125)** is **granted** upon the terms and conditions set forth in this Order.

2.   The court preliminarily certifies the class, as defined in ¶ 1(vv) of the Stipulation and Agreement of Settlement ("Settlement Agreement") (Dkt. 125-4), for the purposes of settlement.

3.   The court preliminarily appoints lead plaintiff Arkansas Teacher Retirement System as class representative for settlement purposes.

4.   The court preliminarily appoints Kessler Topaz Meltzer & Check, LLP as class counsel for settlement purposes.

5.   The court preliminarily finds that the terms of the settlement are fair, reasonable, and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.   The court approves the form, substance, and requirements of the class Notice (Dkt. 125-4, Exh. A-1, Notice).   The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.   A.B. Data, Ltd. shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **January 31, 2022**.

8.  Lead plaintiff shall file a motion for attorney's fees and costs no later than **February 28, 2022**, and notice it for hearing for the date of the final approval hearing set forth below.[7]

9.  Any class member who wishes to:  (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement must file his or her objection to the settlement, or request exclusion no later than **March 28, 2022**, in accordance with the Notice and this Order.

10.  Lead plaintiff shall, no later than **April 11, 2022**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.[8]

11.  Defendants may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **April 18, 2022**.

12.  Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees or costs, shall, no later than **April 18, 2022**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.  A final approval (fairness) hearing is hereby set for **Thursday, May 12, 2022,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel.

14.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 30th day of December, 2021.

/s/
_____
Fernando M. Olguin
United States District Judge

---

[7]  If the request for attorney's fees is made under the percentage-of-the-fund method, counsel shall also make a showing under the lodestar method.

[8]  The motion shall address each Rule 23(e) requirement as well as the <u>Bluetooth</u> factors.