# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY LONGO, individually and on behalf of all others similarly situated, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OSI SYSTEMS, INC., et al., <br><br> Defendants. | Case No. CV 17-8841 FMO (SKx) <br><br> **ORDER RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to lead plaintiff's Motion for Final Approval of Settlement and Plan of Allocation (Dkt. 133, "Motion") and Motion for an Award of Attorneys' Fees and Litigation Expenses (Dkt. 134, "Fees Motion"), and the oral argument presented during the final fairness hearing held on May 12, 2022, the court concludes as follows.

## BACKGROUND

On December 7, 2017, Cory Longo ("Longo") filed this action on behalf of himself and all others similarly situated against OSI Systems, Inc. ("OSI"), Deepak Chopra ("Chopra") and Alan Edrick ("Edrick"), asserting violations of the Securities Exchange Act and associated regulations. (See Dkt. 1, Complaint at ¶¶ 12-15, 47-61). Three related actions were filed shortly thereafter. (See Dkt. 35, Court's Order of March 1, 2018, at 2-3). On March 1, 2018, the court consolidated the actions and appointed the Arkansas Teacher Retirement System ("ATRS") as lead plaintiff and Kessler Topaz Metlzer & Check, LLP ("KTMC") as lead counsel. (Id. at 16).

On June 13, 2019, ATRS and John A. Prokop (collectively, "plaintiffs") filed the operative First Amended Consolidated Class Action Complaint [] ("FAC"), asserting two securities claims on behalf of a class of persons who purchased or acquired OSI stock and convertible notes between August 21, 2013, and February 1, 2018: (1) § 10(b) of the Securities Exchange Act of 1934 ("Securities Exchange Act"), 15 U.S.C. §§ 78j et seq., and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against OSI, Chopra, Edrick, and Ajay Mehra ("Mehra") (collectively, "defendants"); and (2) § 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78t et seq., against defendants Chopra, Edrick, and Mehra. (See Dkt. 76, FAC at p. 1 & ¶¶ 306-22). Plaintiffs' claims stem from allegations that defendants made materially false or misleading statements about OSI's "turnkey" business and its contract with the Albanian government for equipment-based security services. (See Dkt. 131, Court's Order of December 30, 2021 ("Preliminary Approval Order" or "PAO") at 2). Plaintiffs sought damages, attorney's fees and costs, and "such equitable, injunctive or other relief that the Court may deem just and proper." (Id.).

After extensive motion practice, discovery, expert consultations, extensive arm's-length negotiations, and a mediation session that involved two rounds of briefing, (see Dkt. 133-1, Memorandum in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation ("Memo.") at 8-9, 16-17), the parties reached a settlement in October 2021. (Dkt. 125-4, Stipulation and Agreement of Settlement ("Settlement Agreement") at 1, 3). The parties have defined the settlement class as

> all persons and entities who purchased or otherwise acquired OSI common stock or 1.25% convertible senior notes due 2022 (collectively, "OSI Securities") between August 21, 2013 and February 1, 2018, inclusive ("Class Period"), and were damaged thereby.

(Id. at ¶ 1(vv)); (Dkt. 131, PAO at 2).

Pursuant to the settlement, defendants will pay a gross settlement amount of $12.5 million which will be used to pay class members, settlement administration costs, taxes,[1] and attorney's fees and costs. (Dkt. 125-4, Settlement Agreement at ¶¶ 9-10). The settlement states that lead counsel will apply for an award of attorney's fees "not to exceed 25% of the Settlement Fund," (id. at ¶ 16), which equates to $3,125,000, and costs not to exceed $200,000.[2] (Id.). The claims administrator, A.B. Data, Ltd. ("A.B. Data"), shall be paid no more than $200,000 from the gross settlement amount. (Id. at ¶¶ 1(g), 15).

On December 30, 2021, the court granted preliminary approval of the settlement, appointed A.B. Data as the settlement administrator, and directed A.B. Data to provide notice to class members. (See Dkt. 131, PAO at 23-24). Thereafter, A.B. Data implemented the notice program approved by the court. (See Dkt. 133-2, Declaration of Eric Schachter Regarding: (a) Mailing of the Notice, Claim Form, and Exclusion Request Form; (a) Publication of the Summary Notice; and (c) Report on Requests for Exclusion Received to Date ("Schachter Decl.") at ¶¶ 2-7); (Dkt. 133-3, Exh. A, (Class Notice)). Notice packets were sent to 51,214 potential class members and nominees, (see Dkt. 133-2, Schachter Decl. at ¶ 9), a summary notice was published in the Wall Street Journal and PR Newswire, the press release distribution service. (See id. at ¶ 10). A.B. Data established a case-specific toll-free telephone number that class members could call and listen to answers to frequently asked questions or speak with a live operator. (See id. at ¶ 11). Finally, A.B. Data established a website where potential class members could view information

---

[1] The payment of taxes includes "(i) all federal, state, and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants)." (Dkt. 125-4, Settlement Agreement at ¶ 1(aaa)).

[2] Lead counsel states that "there is no clear sailing agreement – implicit or otherwise – between the Parties regarding attorneys' fees and Defendants are free to oppose any aspect of Lead Counsel's request for attorneys' fees." (Dkt. 135, Declaration of Eli R. Greenstein in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocaiton; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses ("Greenstein Decl.") at ¶ 108); (see Dkt. 134-1, Memorandum in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses ("Fees Memo") at 8); (Dkt. 139, Defendants' Brief in Support of Lead Plaintiffs' Motion [] at 2).

about the case. (See id. at ¶ 12). As of April 11, 2022, AB had received 14 requests for exclusion and no objections. (See Dkt. 138-1, Supplemental Declaration of Eric Schachter ("Supp. Schachter Decl.") at ¶ 7); (Dkt. 145-1, Supplemental Declaration of Eric Schachter [] ("Second Supp. Schachter Decl.") at ¶ 3).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23[3] provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig. ("In re Hyundai"), 926 F.3d 539, 569 (9th Cir. 2019) (en banc). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "[T]he settlement must stand or fall as a whole." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 630 (9th Cir. 1982).

Approval of a class action settlement requires the court to conduct a two-step inquiry. First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks,

---

[3] All further "Rule" references are to the Federal Rules of Civil Procedure.

and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement agreement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prod. Liab. Litig. ("Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-Drobnis, 16 F.4th at 608 (same); Briseno v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate.'") (citing Fed. R. Civ. P. 23(e)(2)(C)). Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[4] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

---

[4] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Id. at 940 n. 6; Roes, 1-2 v. SFBSC Management, LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel").

**DISCUSSION**

I. FINAL APPROVAL OF CLASS SETTLEMENT.

    A. <u>Class Certification</u>.

As noted above, the court previously certified a Rule 23 California Class. (<u>See</u> Dkt. 131, PAO at 8-15, 23). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). <u>See</u>, e.g., <u>Gonzalez v. BMC West, LLC</u>, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B. <u>Rule 23(c) Notice Requirements</u>.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice" of particular information. <u>See</u> Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the class notice and notification procedures. (<u>See</u> Dkt. 131, PAO at 20-22). As noted above, the notice program was implemented by A.B. Data. (<u>See</u> Dkt. 133-2, Schachter Decl. at ¶¶ 2-12); (Dkt. 133-3, Exh. A, (Class Notice)); (Dkt. 133-4, Exh. B, (Publication Notice)); (Dkt. 133-5, Exh. C, (Summary Notice)). Based on the record and its prior findings, the court finds that the Class Notice, (<u>see</u> Dkt. 133-3, Exh. A), and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. <u>See</u> Fed. R. Civ. P. 23(c)(2)(B).

   C. <u>Whether the Class Settlement is Fair, Adequate and Reasonable</u>.[5]

    1. **Adequate Representation and Arm's-Length Negotiations**.

  Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); <u>see</u> McKinney-Drobnis, 16 F.4th at 607. Here, the court previously addressed the adequacy of counsel and the arm's-length negotiations factors in connection with preliminary approval. (Dkt. 131, PAO at 10-11, 15-16). With respect to the latter factor, the court noted that the parties engaged in formal discovery, litigated two motions to dismiss, and exchanged detailed mediation briefing addressing liability and damages issues before agreeing to the mediator's settlement recommendation. (<u>Id.</u> at 15). The court concluded, based on the record in this case, that the "parties thoroughly investigated and considered their own and the opposing parties' positions" and "had a sound basis for measuring the terms of the settlement[.]" (<u>Id.</u> at 16). Based on the record before the court and the court's previous findings, the court finds these factors weigh in favor of granting final approval.

    2. **Relief.**

  In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the

---

[5] Prior to the 2018 amendment to Rule 23(e), courts applied the "<u>Churchill</u>" factors to assess whether a class settlement was fair, adequate, and reasonable: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); <u>see</u> McKinney-Drobnis, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule 23(e), the Ninth Circuit instructed courts to consider the <u>Churchill</u> factors). Because the Ninth Circuit has noted that "it is still appropriate for district courts to consider the[ <u>Churchill</u>] factors in their holistic assessment of settlement fairness[,]" McKinney-Drobnis, 16 F.4th at 609 n. 4; <u>see also</u> 2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."), the court will consider them in applying the Rule 23(e)(2) factors.

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

In granting preliminary approval, the court carefully scrutinized the settlement and determined that there was "no evidence that the settlement was 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'" (See Dkt. 131, PAO at 26) (quoting Rodriguez v. W. Publ'g Corp, 563 F.3d 948, 965 (9th Cir. 2009)). Also, the court previously found that the settlement amount was five to ten percent of the maximum potential damages, that it appeared to be in line with the median recovery in comparable securities cases, and that it was "fair, reasonable, and adequate[.]" (See Dkt. 131, PAO at 16-17); (see also Dkt. 131-1, Memo. at 10-11); 4 Newberg on Class Actions, § 13:51 (5th ed.) ("The primary way a court determines whether the settlement's value is sufficient is by (1) making a rough estimate of what the class would have received had it prevailed at trial (or at other endpoints) and then (2) discounting that value by the risks that the class would face in securing that outcome."). Nothing has changed since preliminary approval to undermine the court's previous findings.

        a.    *Costs, Risks, and Delay*.

In granting preliminary approval of the settlement, the court found that the class recovery was adequate, "particularly when taking into account the costs, risks, and delay of trial and appeal." (Dkt. 131, PAO at 17). The court recognized that the "costs and risks of continued litigation [were] significant[,]" and when "[w]eighed against those costs and risks" and the "delays associated with continued litigation," the "relief provided to the class [was] adequate[.]" (Id.); see Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). The settlement provides class members immediate monetary benefits in the face of substantial delay and various defenses to plaintiffs' claims. (See Dkt. 133-1, Memo at 11-16). Under the circumstances, the court finds it significant that class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D.

8

523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds these factors support approval of the settlement.

                b.    *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions, § 13:53 (5th ed.).

In granting preliminary approval, the court approved the plan of allocation and determined that it is reasonable and effective. (See Dkt. 131, PAO at 19-20). The court explained that "class members who submit valid claims will receive a pro rata distribution from the settlement fund based on when they bought and sold OSI Securities." (Id. at 19-20); (see Dkt. 125-4, Appendix ("Appx.") A, Proposed Plan of Allocation of Net Settlement Fund Among Authorized Claimants at ¶¶ 1-3, 9); (Dkt. 125-4, Settlement Agreement at ¶ 22); (Dkt. 133-1, Memo. at 19, 22-23). The court also found that "there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members." (Dkt. 131, PAO at 22). In short, this factor also weighs in favor of approval.

                c.    *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate and reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted this factor "as imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted). In doing so, the court "must balance the proposed award of attorney's fees vis-a-vis the relief provided for the class[.]" Id. (internal quotation marks omitted).

The court must assess the proposed award of attorney's fees by considering the Bluetooth factors.[6] See McKinney-Drobnis, 16 F.4th at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e) analysis.") (internal quotation marks omitted) (brackets in original). Here, consideration of the Bluetooth factors does not undermine the fairness of the settlement.

First, the Settlement Agreement provides that class counsel will seek 25% in attorney's fees from the gross settlement amount of $12.5 million. (Dkt. 125-4, Settlement Agreement at ¶ 16). Thus, counsel would not be receiving a disproportionate share of the settlement. See Bluetooth, 654 F.3d at 947 (noting that a sign of collusion included "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded") (internal quotation marks omitted). Second, the parties noted that there is no clear sailing agreement, (see Dkt. 133-1, Memo. at 21); (Dkt. 135, Greenstein Decl. at ¶ 108); (Dkt. 139, Defendants' Brief in Support of Lead Plaintiffs' Motion [] at 2), or any reverter provision. (See Dkt. 133-1, Memo. at 21). In short, the absence of these "warning signs" of collusion supports approval of the settlement. See Bluetooth, 654 F.3d at 947.

### d. *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[7] Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the parties entered into a confidential supplemental agreement providing that OSI had the right to terminate the Settlement Agreement if the number of requests for exclusion exceeded a certain threshold. (See Dkt. 125-4, Settlement Agreement at ¶ 37); (Dkt.

---

[6] In granting preliminary approval, the court carefully scrutinized the settlement and determined that there was "no evidence that the settlement was 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'" (See Dkt. 131, PAO at 16) (quoting Rodriguez, 563 F.3d at 965).

[7] Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

10

133, Memo. at 20-21). "The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair." Hefler v. Wells Fargo & Co., 2018 WL 4207245, *11 (N.D. Cal. 2018). Moreover, "[t]here are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts." Thomas v. MagnaChip Semiconductor Corp., 2017 WL 4750628, *5 (N.D. Cal. 2017).

### 3. **Equitable Treatment of Class Members**.

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 Newberg on Class Actions, § 13:48 (5th ed.).

Here, the settlement does not favor any particular group of class members. (See, generally, Dkt. 125-4, Settlement Agreement). The net settlement amount will be shared pro rata among all class members who file valid claims pursuant to a "recognized loss" formula developed by lead plaintiff's damages consultant. (See Dkt. 133-1, Memo. at 19, 22-23); (Dkt. 125-4, Settlement Agreement at ¶ 22); see, e.g., In re Extreme Networks, Inc. Sec. Litig., 2019 WL 3290770, *3 (N.D. Cal. 2019) ("The Net Settlement Fund will be distributed among claimants on a pro rata basis based on 'Recognized Loss' formulas tied to claimants' potential damages and developed by ATRS's expert."). Specifically, each authorized claimant's share of the net settlement amount will be based on when the claimant acquired and sold the subject securities. (See Dkt. 125-4, Settlement Agreement at ¶ 22); (Dkt. 133-3, Exh. A, Notice, Appx. A, Proposed Plan of Allocation of Net Settlement Fund Among Authorized Claimants at 10-11). Accordingly, this factor also weighs in favor of final approval.

### 4. **The Reaction of Class Members to the Proposed Settlement**.

The reaction of the class members to the proposed settlement has been very positive as there were no objections and only 14 requests for exclusion. (See Dkt. 135, Greenstein Decl. at ¶¶ 94, 105); (Dkt. 138-1, Supp. Schachter Decl. at ¶ 7); (Dkt. 145-1, Second Supp. Schachter

Decl. at ¶ 3). The positive reaction of the class supports approval of the settlement. See, e.g., Destefano v. Zynga, Inc., 2016 WL 537946, *14 (N.D. Cal. 2016) ("[A] low number of exclusions representing a small fraction of shares in the public float also supports the reasonableness of a securities class action settlement."); Bostick v. Herbalife Int'l of Am., Inc., 2015 WL 12731932, *26 (C.D. Cal. 2015) (approving settlement with 687 exclusion requests out of proposed class of 1.5 million individuals and noting that "[c]ourts generally consider a low number of requests for exclusion [] to weigh strongly in favor of settlement approval"); Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections). In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

II.   ATTORNEY'S FEES AND COSTS.

    A.   Attorney's Fees.

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see id. (In class actions where a "settlement produces a common fund . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); In re Hyundai, 926 F.3d at 570. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The percentage-of-recovery method is typically used when a common fund is created. See id. at 942.

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See In re Hyundai, 926 F.3d at 570. Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" Id. (internal citation omitted). However, "adjustments [to the lodestar calculation] are the exception rather than the rule." Fischel v. Equitable Life Assurance Society of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM Holdings, Inc., 794 F.Appx. 584, 586 (9th Cir. 2019) (same).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark." In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." Id.; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of the work; (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

1   Here, the court will utilize the percentage of fund method, as it is the most likely to achieve a reasonable result. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."); (Dkt. 134-1, Fee Memo. at 6-9) (requesting attorney's face based on the percentage of fund method). Under the circumstances, the court finds that the requested attorney's fees, which do not depart from the 25% benchmark, constitute a reasonable fee. See In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"); Bluetooth, 654 F.3d at 942 (noting benchmark is a reasonable fee award). A lodestar cross-check further supports the reasonableness of the fee request. The fee request equates to a minimal multiplier of 0.77, (see Dkt. 134-1, Fee Memo. at 10-11), based on counsel's lodestar of $4,054,672.25. (See Dkt. 134-1, Fee Memo. at 9-10); (Dkt. 135, Greenstein Decl. at ¶¶ 113, 126); (Dkt. 134-3, Declaration of Eli R. Greenstein in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses Filed on Behalf of Kessler Topaz Meltzer & Check LLP, Exh. A (time report)); (Dkt. 134-7, Declaration of Jeffrey A. Koncius in Support of Lead Counsel's Motion for an Award of Attorney's Fees and Litigation Expenses Filed on Behalf of Kiesel Law LLP, Exh. A (time report)); (Dkt. 134-11, Declaration of Lester R. Hooker in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses filed on Behalf of Saxena White P.A., Exh. A (time report)); (Dkt. 134-15, Declaration of Matt Keil in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses Filed on Behalf of Keil & Goodson P.A., Exh. A (time report)).

B.   Costs.

Class counsel seek $134,863.08 in costs. (See Dkt. 134-1, Fee Memo. 1, 20). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $134,863.08 in costs.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.  Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation **(Document No. 133)** is **granted** as set forth herein.

2.  Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses **(Document No. 134)** is **granted** as set forth herein.

3.  The court hereby **grants final approval** of the parties' Stipulation and Agreement of Settlement ("Settlement Agreement") (Document No. 125-4). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

4.  The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ 1(vv) of Settlement Agreement.

5.  The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

6.  Class counsel shall be paid $3,125,000.00 in attorney's fees, and $134,863.08 in costs in accordance with the terms of the Settlement Agreement and this Order.

7.  The Claims Administrator, A.B. Data, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

8.  All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

9.  Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

10. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

11.  Judgment shall be entered accordingly.

Dated this 31st day of August, 2022.

/s/
Fernando M. Olguin
United States District Judge